# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM LOGAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ORGANIC HARVEST, LLC, ) <br> ) <br> Defendant. ) | Case No.: 2:18-cv-00362-SGC |

## MEMORANDUM OPINION & ORDER[1]

This is an employment discrimination case. The plaintiff, William Logan, claims the defendant, Organic Harvest, LLC, discriminated against him on the basis of his religion and then retaliated against him for opposing the discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (Doc. 1). Pending before the undersigned is the defendant's motion for summary judgment. (Doc. 26). For the reasons discussed below, the motion is due to be denied.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 19).

## I. Material Facts[2]

The defendant employed the plaintiff as a hot bar cook from January 31, 2016, until February 15, 2017. (Doc. 29-1 at ¶ 3). During this time, the defendant used a rotating system to schedule employees for Saturday shifts. (Doc. 27-1 at p. 24). According to the defendant, the system generally required employees to work every other Saturday. (*Id.*).

In the fall of 2016, the plaintiff began observing the religious practices of the Sabbath-Keepers, which prohibited him from working during the day on Saturdays. (Doc. 1 at ¶ 12; Doc. 29-1 at ¶¶ 10-11). In January 2017, the plaintiff approached his supervisor, Erica Bray, and requested she not schedule him for Saturday shifts so he could observe the Saturday Sabbath. (Doc. 27-1 at pp. 21-22; Doc. 29-1 at ¶ 12). Bray approached her manager, Michael Maddox, and suggested that as an accommodation she schedule the plaintiff for a Saturday shift only once every four to six weeks. (Doc. 27-1 at pp. 12, 22, 25-26). Maddox told Bray the defendant did not make any religious accommodations but, nonetheless, he was amendable to Bray's suggestion. (*Id.* at pp. 20-21, 25).

Although Bray informed the plaintiff she would schedule him for only one Saturday shift every four to six weeks, she scheduled the plaintiff to work two

---

[2] The following facts are undisputed, unless otherwise noted. They are viewed in the light most favorable to the plaintiff, as the non-movant, with the plaintiff given the benefit of all reasonable inferences.

Saturdays in a row – Saturday, February 11, 2017, and Saturday, February 18, 2017. (*Id.* at pp. 24, 47, 49; Doc. 29-1 at ¶¶ 13-14). Prior to his Saturday, February 11th shift, the plaintiff arranged for Andrew Boggan to work for him. (Doc. 29-1 at ¶ 20).[3] The defendant had a policy permitting shift swapping, provided a swap did not cause an employee to incur overtime. (*Id.* at ¶ 19; Doc. 27-1 at p. 40). By working the Saturday, February 11th shift for the plaintiff, Boggan incurred overtime. (Doc. 27-1 at pp. 40-41).

Maddox suspended the plaintiff until February 15, 2017. (Doc. 29-1 at ¶ 21). The plaintiff met with Maddox when he returned to work on February 15, 2017. (*Id.* at ¶¶ 22-23). During the meeting, Maddox rejected the accommodations proposed by the plaintiff and told the plaintiff he had to continue working his Saturday shifts as scheduled. (*Id.* at ¶¶ 26-29, pp. 8-14). After the plaintiff responded he could not work on Saturdays, Maddox replied he guessed it was best for the plaintiff and the defendant to "part[] company," suggested the plaintiff "find something that [would] accommodate [him]," and wished the plaintiff luck. (*Id.* at ¶ 30, pp. 13-14). The plaintiff stated, "Alright." (*Id.* at p. 14). According to the defendant's characterization of this exchange, the plaintiff abandoned his job. (Doc. 26 at p. 5).

---

[3] According to the plaintiff, Boggan was not included in the Saturday schedule rotation regularly and worked only two Saturdays between October 26, 2016, and February 10, 2017. (Doc. 29-1 at ¶¶ 16-17).

According to the plaintiff's characterization of the exchange, the defendant terminated him. (Doc. 29 at pp. 6-7).

## II.  Standard of Review

Under Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE, "[t]he [district] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record the party believes demonstrate the absence of a genuine dispute as to a material fact. *Celotex Corp.*, 477 U.S. at 323. If the moving party carries its initial burden, the non-movant must go beyond the pleadings and come forward with evidence showing there is a genuine dispute as to a material fact for trial. *Id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.* at 248. If the evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Id.* at 249-50 (internal citations omitted). All reasonable doubts about the facts should be resolved in favor of the non-movant, and all justifiable inferences

should be drawn in the non-movant's favor. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## III. Discussion

Title VII prohibits two different types of religious discrimination: (1) discrimination on the basis of a religious observance or practice and (2) discrimination on the basis of pure belief. *See* 42 U.S.C. § 2000e-2(a)(1) (making it unlawful for an employer to discriminate against an individual on the basis of his religion), § 2000e(j) (defining "religion" as "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate [] an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business"); *Johnson v. AutoZone, Inc.*, 768 F. Supp. 2d 1124, 1136 (N.D. Ala. 2011) (identifying the two legal theories available to prosecute a Title VII religious discrimination claim). It also prohibits discriminatory retaliation. *See* 42 U.S.C. § 2000e-3(a). The plaintiff asserts a claim for each type of religious discrimination – referred to as the accommodation claim and the disparate treatment claim, respectively – as well as a claim for discriminatory retaliation. (Doc. 1).

### A. Accommodation Claim

"An employer has a 'statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring undue hardship.'"

5

*Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1293 (11th Cir. 2012) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)). For purposes of evaluating failure-to-accommodate claims, courts apply a burden-shifting framework similar to that articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* Under this framework, a plaintiff establishes a *prima facie* case by showing (1) he had a *bona fide* religious belief that conflicted with an employment requirement; (2) he informed his employer of that belief; and (3) he was discharged for failing to comply with the conflicting employment requirement. *Id.* The burden then shifts to the employer to demonstrate it either offered the plaintiff a reasonable accommodation or could not do so without undue hardship. *Id.*

The concepts of reasonable accommodation and undue hardship are not defined by Title VII, and therefore, "the precise reach of the employer's obligation to its employee is unclear . . . . and must be determined on a case-by-case basis." *Beadle v. Hillsborough Cty. Sheriff's Dep't*, 29 F.3d 589, 592 (11th Cir. 1994). " 'Each case necessarily depends upon its own facts and circumstances, and in a sense every case boils down to a determination as to whether the employer has acted reasonably.'" *Beadle v. City of Tampa*, 42 F.3d 633, 636 (11th Cir. 1995) (quoting *United States v. City of Albuquerque*, 545 F.2d 110, 114 (10th Cir. 1976)). The Supreme Court has provided some guidance by indicating an accommodation that

6

"eliminates the conflict between employment requirements and religious practices" is a reasonable one, *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 (1986), and an act that would "require [an employer] to bear more than a *de minimis* cost" is an undue hardship, *Hardison*, 432 U.S. at 84.

"[A]ny reasonable accommodation by the employer is sufficient to meet its accommodation obligation." *Walden*, 669 F.3d at 1294. An employer is not required to give an employee a choice among several accommodations or show alternative accommodations proposed by an employee constitute undue hardship. *Beadle*, 29 F.3d at 592 (citing *Philbrook*, 479 U.S. at 68). " '[W]here the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end.'" *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1324 n.7 (11th Cir. 2007) (quoting *Philbrook*, 479 U.S. at 68); *see also Beadle*, 29 F.3d at 592 ("[T]he inquiry ends when an employer shows that a reasonable accommodation was afforded the employee, regardless of whether that accommodation is one which the employee suggested.") (citing *Philbrook*, 479 U.S. at 68).

Here, the defendant does not contend the plaintiff has failed to establish a *prima facie* case and instead argues (1) it used a neutral rotating system to schedule employees for Saturday shifts that was in and of itself a reasonable accommodation of the plaintiff's religious practice; (2) it went beyond its Title VII obligation by

7

deviating from the system to schedule the plaintiff for fewer Saturday shifts than his co-workers; and (3) exempting the plaintiff from the Saturday shift rotation altogether would have required it to experience undue hardship because it would have had to choose between being short-handed or "possibly paying overtime hours" to another employee for covering the plaintiff's Saturday shifts. (Doc. 26).

### 1. Purported Neutral Rotating Shift System

The defendant cites *Hardison* to support its argument a neutral rotating shift system is a *per se* reasonable accommodation of an employee's religious practice. In *Hardison*, the Supreme Court did note an employer's use of a system for allocating shifts based on the preference of employees in order of seniority was "a significant accommodation to the needs, both religious and secular, of all of [its] employees" and held the employer was not required to jettison the system, which was a provision of a collective bargaining agreement between the employer and a union to which the plaintiff belonged, to satisfy its Title VII obligation. 432 U.S. at 77-83. However, the Court's conclusion the employer had done all that was required by Title VII, took into account not only the seniority system but also the efforts made by the employer to accommodate the religious practice of the plaintiff within that system. The employer had held several meetings with the employee at which it attempted to find a solution to the scheduling problem, made it possible for the employee to observe his religious holidays, authorized the union steward to search

8

for a volunteer to swap shifts with the employee, and attempted to find another job assignment for the employee. *Id.* at 77. Although these efforts were not successful, the Court agreed the employer "had done all that could reasonably be expected within the bounds of the seniority system," which was at least "a neutral way of minimizing the number of occasions when an employee must work on a day that he would prefer to have off" for religious or other reasons. *Id.* at 77-78.

In short, the Court in *Hardison* did not hold a neutral system for assigning shifts, without more, constitutes a reasonable accommodation of an employee's religious practice but, rather, considered the particular facts and circumstances of the case before it and determined the employer had made reasonable efforts to accommodate its employee. *Id.* at 77-83; *see also Rice v. U.S.F. Holland, Inc.*, 410 F. Supp. 2d 1301, 1312 (N.D. Ga. 2005) (reading *Hardison* similarly); *Murphy v. Edge Mem. Hosp.*, 550 F. Supp. 1185, 1189 (M.D. Ala. 1982) (reading *Hardison* as standing for the proposition an employer "is not required to alter [its] neutral scheduling system, but may satisfy the reasonable accommodation requirement [of Title VII] by demonstrating efforts to accommodate an employee within the neutral system."); *Antoine v. First Student, Inc.*, 713 F.3d 824, 838-39 (5th Cir. 2013) (holding mere existence of neutral system for assigning shifts was not a reasonable accommodation *per se*, where employer had procedure for facilitating voluntary route swaps and evidence, viewed in light most favorable to plaintiff, showed

employer did not use procedure to attempt to secure another employee to cover route that conflicted with plaintiff's observation of Saturday Sabbath).

## 2. Alleged Additional Accommodation

The question then becomes whether the defendant's alleged willingness to deviate from its purported neutral rotating shift system by scheduling the plaintiff for fewer Saturday shifts than his co-workers constituted a reasonable accommodation of the plaintiff's religious practice.[4] Certainly, this offer did not "eliminate[]" the conflict between the defendant's employment requirement and the plaintiff's religious practice. *See Philbrook*, 479 U.S. at 70. The verb "eliminate" means "to remove [something] completely." *Eliminate*, Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/eliminate (last visited March 26, 2020). Consistent with the common understanding of the verb, some circuit courts of appeals have held that where an employee's religion prohibits him from working on any Saturday, allowing him merely to work on fewer Saturdays is not a reasonable accommodation. *See Benton v. Carded Graphics, Inc.*, 28 F.3d 1208 (4th Cir. 1994) ("[O]ffers to reduce the number of working Saturdays to as few

---

[4] The undersigned refers to the "purported" neutral rotating shift system because it is not clear why Boggan worked only two Saturdays between October 26, 2016, and February 10, 2017, if the system generally required employees to work every other Saturday. The undersigned refers to the "alleged" willingness to deviate from the purported system because shortly after Bray told the plaintiff she would schedule him for only one Saturday shift every four to six weeks, she scheduled the plaintiff to work two Saturdays in a row.

as possible would not accommodate an employee whose religion prohibits working on *any* Saturday.); *Crider v. Univ. of Tennessee, Knoxville*, 492 F. App'x 609, 613 (6th Cir. 2012) ("Offering [the plaintiff] fewer Saturday shifts is not a reasonable accommodation to religious beliefs which *prohibit* working on Saturdays."); *Tabura v. Kellogg USA*, 880 F.3d 544, 550 (10th Cir. 2018) ("In this case, an accommodation will not be reasonable if it only provides Plaintiffs an opportunity to avoid working on some, but not all, Saturdays."); *cf. Baker v. The Home Depot*, 445 F.3d 541, 547-48 (2d Cir. 2006) ("[T]he shift change offered to [the plaintiff] was no accommodation at all because, although it would allow him to attend morning church services, it would not permit him to observe his religious requirement to abstain from work *totally* on Sundays."); *Favero v. Huntsville Indep. Sch. Dist.*, 939 F. Supp. 1281, 1287 (S.D. Tex. Aug. 9, 1996) (holding employer failed to reasonably accommodate employees' request for eight days off to attend religious festival when it offered to give them five days off because "a reasonable accommodation is one that *eliminates* the employee's conflict between his religious practices and work requirements"), *aff'd*, 110 F.3d 793 (5th Cir. 1997).

However, at the same time, some circuit courts of appeals have stopped short of requiring that in all cases an accommodation must remove a religious conflict completely to be reasonable. The Fourth Circuit has rejected totality as inconsistent with the modifier "reasonably," which is used in Title VII to describe the requisite

11

accommodation. *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 313 (4th Cir. 2008). The Eighth and Tenth Circuits have reasoned that while the Court in *Philbrook* held an accommodation is reasonable if it eliminates a religious conflict, it did not hold the reciprocal (i.e., that an accommodation is not reasonable if it does not eliminate a religious conflict or, in other words, that an accommodation must eliminate a religious conflict to be reasonable). *Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1030-31 (8th Cir. 2008) (ultimately holding "[w]hat is reasonable depends on the totality of the circumstances and therefore might, or might not, require elimination of a particular, fact-specific conflict"); *Tabura*, 880 F.3d at 551-52 (citing *Sturgill*).[5] The Eleventh Circuit, while acknowledging the Supreme Court's use of the verb "eliminate" in *Philbrook*, has stated simply that "[g]uarantees are not required." *Patterson v. Walgreen Co.*, 727 F. App'x 581, 586-87 (11th Cir. 2018) (noting evidence showed "that even if moving [plaintiff to different position] did not completely eliminate the conflict, it would have enhanced the likelihood of avoiding it"), *cert. denied*, 140 S. Ct. 685 (U.S. Feb. 24, 2020); *see also Telfair v. Federal Exp. Corp.*, 934 F. Supp. 2d 1368, 1384 (S.D. Fla. 2013) (adopting reason and rule of *Sturgill*), *aff'd*, 567 F. App'x 681 (11th Cir. 2014).

---

[5] The Northern District of Indiana has noted courts have accepted as reasonable accommodations that do not totally remove religious conflicts, such as shift-swapping policies pursuant to which an employee has a less than 100% success rate, and that the *de facto* approach of the Seventh Circuit seems to be in line with that of the Eighth Circuit. *Williams v. U.S. Steel Corp.*, 40 F. Supp. 3d 1055, 1066 (N.D. Ind. 2014) (citing *Sturgill*).

12

Ultimately, it is not necessary to resolve the tension illustrated above in this case. Even if an offer to remove a Sabbath-Keeper from fewer than all Saturday shifts could be a reasonable accommodation in some cases, the plaintiff in this case at least has raised a genuine issue of material fact as to whether the defendant fulfilled its obligation to reasonably accommodate him by coming forward with evidence the defendant had a shift-swapping policy it did not permit him even to attempt to use. The Northern District of Georgia reached a similar result in *Rice*, where the employer did not offer the plaintiff the opportunity to use its informal shift-swapping policy to resolve his religious conflict with working on Saturdays. 410 F. Supp. 3d at 1309-11, 1313.

This is not to say the defendant was required to have allowed the plaintiff to swap his Saturday, February 11, 2017 shift with Boggan. The defendant has submitted undisputed testimony the swap caused Boggan to incur overtime, and it is clear the payment of premium wages goes beyond an employer's obligation to provide a reasonable accommodation for an employee's religious practice. *See Hardison*, 432 U.S. at 84 (holding payment of premium wages to cover shift with which plaintiff had religious conflict would have imposed more than *de minimis* cost and, therefore, undue burden on employer). Similarly, the defendant was not required to force other employees to swap shifts with the plaintiff or even to assist the plaintiff in finding someone to swap shifts with him. *See Hardison*, 432 U.S. at

13

80-81 (explaining employer is not required to accommodate employee's religious observance at expense of other employees who have other strong, but non-religious, reasons for not working that shift); *Beadle*, 29 F.3d at 591-93 (holding that by allowing plaintiff to arrange shift swaps with his co-workers and aiding him in these efforts by posting co-worker's schedules, employer fulfilled its Title VII obligations, notwithstanding plaintiff's argument employer should have actively assisted him in finding replacements for shifts that conflicted with his Sabbath); *Morrissette-Brown*, 506 F.3d at 1323 (holding that by instructing plaintiff to find another employee with whom to swap shifts that conflicted with her religious practice, posting master schedule that plaintiff could have used to find someone with whom to swap shifts, and approving all of plaintiff's requests for shift swaps, employer likely fulfilled its Title VII obligations, "despite the fact that [it] did not actively assist in coordinating other shift arrangements"); *Patterson*, 727 F. App'x at 587 ("[The employer] was not required to ensure that [the plaintiff] was able to swap his shift, nor was it required to order another employee to work in his place.").

However, the facts viewed in the light most favorable to the plaintiff indicate the defendant was not willing to allow the plaintiff even to attempt to use the shift-swapping system to cover his Saturday shifts. Bray did not suggest to the plaintiff that he use the policy to resolve his religious conflict with the Saturday shifts for which she scheduled him, and Maddox implicitly prohibited it by unequivocally

14

telling the plaintiff during the February 15, 2017 meeting that he had to continue working his Saturday shifts as scheduled and should look for another job if he was unable to comply with that requirement.

### 3. Assertion of Undue Burden

The defendant argues exempting the plaintiff from the Saturday shift rotation altogether would have required it to experience undue hardship because it would have had to choose between being short-handed or "possibly paying overtime hours" to another employee for covering the plaintiff's Saturday shifts. The undersigned agrees the defendant was not required to have *removed* the plaintiff from the Saturday shift rotation and born the cost of either a diminished work force or payment of premium wages. *See Hardison*, 432 U.S. at 84 (holding that if employer had permitted plaintiff to work four-day work week so that he could observe Saturday Sabbath, it would have incurred more than *de minimis* cost (i.e., undue hardship) in the form of lost efficiency (to extent it simply went short-handed) or payment of premium wages (to extent it replaced plaintiff on Saturdays)). However, permitting the plaintiff to have attempted to *swap* his Saturday shifts for the non-Saturday shifts of another employee in compliance with the defendant's shift-swapping policy could have eliminated both hardships, and the defendant has not shown that merely permitting the plaintiff to attempt to use the shift-swapping policy would have imposed an undue hardship on it.

15

For the foregoing reasons, the defendant's motion for summary judgment is due to be denied as to the plaintiff's accommodation claim.

B.  **Disparate Treatment & Retaliation Claims**

The defendant argues the reasonable accommodation it provided the plaintiff is dispositive of not only the plaintiff's accommodation claim but also his disparate treatment and retaliation claims. (Doc. 26 at 11-12; Doc. 31 at 1-2). This argument is based on the defendant's interpretation of the plaintiff's disparate treatment and retaliation claims as based on the allegation the defendant did not provide the plaintiff with a reasonable accommodation for his religious practice. It relies on the Eleventh Circuit's holding in *Patterson* that the district court correctly determined the plaintiff's accommodation, disparate treatment, and retaliation claims all turned on the defendant's alleged failure to accommodate the plaintiff's religious practice and properly disposed of all three claims based on the conclusion the defendant proved it provided the plaintiff with a reasonable accommodation. *See Patterson*, 727 F. App'x at 589. The argument fails given the conclusion the defendant has not shown as a matter of law that it provided a reasonable accommodation to the plaintiff.

In response, the plaintiff argues he has come forward with direct evidence to support his disparate treatment and retaliation claims and, regardless, that the defendant's failure to challenge his disparate treatment and retaliation claims on any

16

basis other than the one rejected above requires that the claims survive summary judgment. (Doc. 29 at 13-17). The undersigned agrees with the plaintiff's second argument and, in the interest of judicial economy, declines to address the first.

As noted, the party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion, and *if* the moving party carries its initial burden, the non-movant must come forward with evidence showing there is a genuine dispute as to a material fact for trial. *Celotex Corp.*, 477 U.S. at 323-24. "The district court bears no burden to distill every potential argument that could be made based upon the materials before it on summary judgment." *United States ex rel. Columbia v. Med. Cent. East*, 2007 WL 9753709, at *1 (N.D. Ala. July 9, 2007) (citing *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990)). Given the only argument the defendant makes for dismissing the plaintiff's disparate treatment and retaliation claims is without merit, those claims survive.

## IV. Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (Doc. 26) is **DENIED**.

**DONE** this 1st day of April, 2020.

*/s/ Staci G. Cornelius*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE